1  DANIEL CASILLAS, ESQ., SBN 110298
   Attorney at Law
2  101 West Broadway, Suite 1950
   San Diego, California 92101
3  Tel: (619) 237-3777
   Fax: (619) 238-9914
4  Email: dcesq1@sbcglobal.net

5  Attorney for Defendant

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10            **(HONORABLE JOHN A. HOUSTON)**

11  UNITED STATES OF AMERICA,          Criminal Case No. 07CR2883-JAH

12                          Plaintiff,

13  vs.                                **MEMORANDUM OF POINTS AND**
                                       **AUTHORITIES IN SUPPORT OF**
14                                     **MOTIONS**
    MARTIN ORTIZ-WENSE,
15
                          Defendant.
16

17                            **I**

18                   **STATEMENT OF FACTS**

19        On October 4, 2007, a DEA confidential source (hereinafter referred to as CS), at the

20  direction of DEA agents, met with Ruben Navarro-Maldonado to discuss the purchase of one

21  pound of methamphetamine.  During the course of negotiation Mr. Navarro-Maldonado told the CS

22  that he was waiting for his "guy" to bring him some "stuff' (methamphetamine).  Agents continued

23  surveillance of Mr. Navarro-Maldonado throughout the day.  Later that day, Mr.

24  Navarro-Maldonado  met with an a male later identified as Martin Ortiz-Wense who allegedly

25  delivered methamphetamine to Mr. Navarro-Maldonado.  Shortly after meeting with Mr.

26  Ortiz-Wense, Mr. Navarro-Maldonado contacted the CS indicating that he had 10 ounces of

27  methamphetamine for the CS.  At the direction of Agents, the CS met with Mr. Navarro-Maldonado

28  to look at the methamphetamine and observed the methamphetamine.  After observing the

                              1

1   methamphetamine the CS contacted Agents and Mr. Navarro-Maldonado was subsequently arrested.

2       After the above described incident, Mr. Ortiz-Wense was arrested at his home.  During a

3   search of his home, Agents recovered a minute amount of methamphetamine, a digital scale and U.S.

4   Currency.

5                                           **II**

6   **THIS COURT SHOULD ORDER A SEVERANCE OF MR. ORTIZ-WENSE'S TRIAL TO**

7   **PROTECT HIS DUE PROCESS AND CONFRONTATION RIGHTS**

8   **A.      Fifth Amendment Due Process And Fed. R. Crim. P. 14 Compel Severance.**

9       At this stage of the proceedings, counsel cannot know whether Mr. Ortiz-Wense's co-

10  defendant would testify at a joint trial.  Government reports indicate that his co-defendant, Mr.

11  Navarro-Maldonado, made incriminating statements at the time of his arrest and implicated Mr.

12  Ortiz-Wense, and counsel anticipates that the government would seek to introduce some or all of

13  those statements at trial.  Thus, Mr. Ortiz-Wense moves for an order granting severance, if this co-

14  defendant takes the position that he would not testify at a joint trial.  Fed.R.Crim.P. 14.

15      Should Mr. Navarro-Maldonado exercise his right not to testify, admission of his statement

16  would violate Mr. Ortiz-Wense's Confrontation rights, even if this Court cautioned the jury not to

17  consider it against Mr. Ortiz-Wense.  Bruton v. United States, 391 U.S. 123 (1968); see Cruz v. New

18  York, 481 U.S. 186, 190 (1987).  This is because Mr. Navarro-Maldonado would be unavailable for

19  cross-examination, and such examination is the primary means through which Confrontation rights

20  are realized. U.S. Const. Amend. VI;  Crawford v. Washington, 124 S.Ct. 1354 (2004); Lily v.

21  Virginia, 527 U.S. 116, 123-24 (1999); Bruton v. United States, 391 U.S. 123, 126 (1968); Delaware

22  v. Van Arsdall, 475 U.S. 673, 678 (1986); Davis v. Alaska, 415 U.S. 308, 315 (1974).  Severance is

23  thus necessary "unless the [co-]defendant takes the stand." Richardson v. Marsh, 481 U.S. 200, 206

24  (1987).

25      The Supreme Court has declared that due process and Fed. R. Crim. P. 14 mandate separate

26  trials for defendants joined under Rule 8 if the facts of the case would "prevent the jury from making

27  a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).

28  "Such a risk might occur when evidence that the jury should not consider against a defendant and

07CR2883-JAH

1  that would not be admissible if a defendant were tried alone is admitted against a co-defendant.  For

2  example, evidence of a co-defendant's wrongdoing in some circumstances erroneously could lead a

3  jury to conclude that a defendant was guilty."  Id.

4          In assessing whether joinder is prejudicial, of foremost importance is whether the evidence

5  as it relates to the individual defendant is easily compartmentalized.  United States v. Patterson, 819

6  F.2d 1495, (1982).  Central to this determination is the trial judge's diligence in instructing the jury

7  on the purpose to the various types of evidence.  See, e.g., United States v. Cuozzo, 962 F.2d at 950;

8  United States v. Ford, 632 F.2d at 1374 (refusal to sever upheld "[w]here the district judge has

9  instructed the jury as to the admissibility of evidence and the appellants have failed to show an

10  inability on the part of the jury to compartmentalize the evidence as it relates to each defendant");

11  United States v. Rasheed, 663 F.2d 843, 854-55 (9th Cir. 1981) (refusal to sever upheld even though

12  evidence against co-defendant was much stronger because judge gave proper cautionary instructions

13  to jury and appellants failed to indicate how jury would be unable to compartmentalize the evidence.

14  Id.  The most common reason for severing a trial is where co-defendants present mutually exclusive

15  or irreconcilable defenses.  United States v. Rucker, 915 F.2d 1511, 1513 (11th Cir. 1990) (where

16  two co-defendants whose vehicle contained a gun and cocaine and each claim ignorance about

17  contraband, jury would be unable to believe testimony of either defendant without disbelieving co-

18  defendant's testimony).  Severance has been granted when the charges brought against the defendant

19  or weight of the evidence supporting each charge is wholly disparate or disproportionate.  United

20  States v. Sampol, 636 F.2d 621, 0642-651 (D.C. Cir. 1980) (severance required where vast bulk of

21  testimony was about co-defendant's assassination charge, where testimony was gruesome, where no

22  curative jury instructions were given, where confusion of charges and evidence was likely, and

23  where defendant was not permitted to cross-examine some witnesses); United States v. Donaway,

24  447 F.2d 940, 943 (9th Cir. 1971) (severance required where government's case covered more than

25  2,300 pages of transcripts, less than 50 of where were related to Donaway).

26          Mr. Ortiz-Wense's case mirrors the concerns of the Supreme Court in Zafiro.  At trial the

27  evidence will show that on this occasion, Mr. Navarro-Maldonado negotiated with a DEA

28  confidential source (CS) for the purchase and delivery of one pound of methamphetamine.  On the

07CR2883-JAH

date in question, Mr. Navarro-Maldonado was observed meeting with Mr. Ortiz-Wense, after which

he contacted the CS to deliver 10 ounces of methamphetamine.  The evidence will show that Mr.

Navarro-Maldonado made incriminating post arrest statements implicating Mr. Ortiz-Wense.  Mr.

Navarro-Maldonado stated that he had purchased the methamphetamine that he delivered to the CS

from Mr. Ortiz-Wense.  The <u>Zafiro</u> court has also advocated severance "if there is a serious risk that

a joint trial would compromise a specific trial right of one of the defendants." <u>Zafiro</u>, 506 U.S. at

539.  "Evidence that is probative of a defendant's guilt but technically admissible only against a co-

defendant also might present a risk of prejudice."  <u>Id</u>. (citing <u>Bruton v. United States</u>, 391 U.S. 123

(1968)). Possible statements of Mr. Navarro-Maldonado that Mr. Ortiz-Wense sold him the

methamphetamine that he delivered to the CS if admitted at trial against Mr. Ortiz-Wense would

violate his right to confront witnesses against him.

Moreover, the Court cannot avoid severing defendants in this case by simply suppressing

evidence about Navarro-Maldonado's statements.  "[A] defendant might suffer prejudice if essential

exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint

trial." <u>Zafiro</u>, 506 U.S. at 539. Mr. Ortiz-Wense has constitutional rights under the Fifth and Sixth

Amendments to present third party culpability evidence, such as the evidence of Navarro-

Maldonado's admissions in this case, as well as the fact that he obtained the methamphetamine from

someone else, and that Mr. Ortiz-Wense had no part in the operation.  <u>United States v. Vallejo</u>, 237

F.3d 1008, 1023, <u>amended</u>, 246 F.3d 1150 (9th Cir. 2001). Thus, suppressing evidence about Mr.

Navarro-Maldonado's confession would amount to nothing but prejudice because the Court's order

would truncate Mr. Ortiz-Wense's trial defense.

Finally, the Ninth Circuit has held that the district court should sever defendants who have

mutually exclusive defenses so long as there exists clear and manifest prejudice.  <u>United States v.</u>

<u>Tootick</u>, 952 F.2d 1078, 1083 (9th Cir. 1991). "Mutually exclusive defenses are said to exist when

acquittal of one co-defendant would necessarily call for the conviction of other.  The prototypical

example is a trial in which each of two defendants claim innocence, seeking to prove instead that the

other committed the crime.  <u>Id</u>., at 1081 (citation and internal quotations omitted).  Given his

defense of third party culpability described above, clear and manifest prejudice would adhere to Mr.

07CR2883-JAH

1    Ortiz-Wense's trial (and to Navarro-Maldonado's) because the separate defense teams would act as

2    additional prosecutors.  The jury may simply convict Mr. Ortiz-Wense and Navarro-Maldonado

3    rather than reaching a deliberate verdict after analyzing the evidence.  Compare id., at 1082-1083.

4         Thus, following the three rationales described in Zafiro, and the rationale described in

5    Tootick, to preserve due process and to avoid undue prejudice to Mr. Ortiz-Wense, this Court should

6    sever this trial from that of his co-defendant.

7    **B.     Sixth Amendment Confrontation And Cross-Examination Rights Compel Severance In**

8    **This Case.**

9         The Sixth Amendment guarantees the accused the rights to confront and to cross-examine

10   witnesses against him.  Crawford v. Washington, 124 S.Ct. 1354 (2004); Lily v. Virginia, 527 U.S.

11   116, 123-24 (1999); Bruton v. United States, 391 U.S. 123, 126 (1968). The Supreme Court has held

12   that "the substantial risk that the jury, despite [jury] instruction to the contrary, looked to the

13   incriminating extrajudicial statements in determining petitioner's guilt, admission of [the] confession

14   in this joint trial violated the petitioner's right to cross-examination secured by the Confrontation

15   Clause of the Sixth Amendment."  Bruton, 391 U. S. 123 at 126.

16        The Supreme Court has made clear that testimonial hearsay statements are barred under the

17   Confrontation Clause, unless witnesses are unavailable and Mr. Ortiz-Wense has had a prior

18   opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable

19   by the Court. Crawford, 124 S. Ct. 1354.  In Crawford, the Supreme Court held, pursuant to the

20   Sixth Amendment, that pre-trial testimonial statements may not be admitted against a defendant

21   where Mr. Ortiz-Wense has not had a chance to cross-examine the declarant. Id. at 1374. ("[w]here

22   testimonial evidence is at issue, however, the Sixth Amendment demands what the common law

23   required: unavailability and a prior opportunity for cross-examination").  This is true even where the

24   statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of

25   trustworthiness." Id. at 1364, 1369 ("[w]here testimonial statements are at issue, the only indicium

26   of reliability sufficient to satisfy constitutional demands is the one the Constitution actually

27   prescribes: confrontation").

28        Here, the statements of Mr. Ortiz-Wense's co-defendant are clearly testimonial. They were

07CR2883-JAH

taken pursuant to interrogation by federal agents. As such, the reliability of the statements can only be tested in one way: cross-examination. This Court has the power to sever Mr. Ortiz-Wense's trial, and thus preserve his rights of confrontation and cross-examination. U.S. Const. Amend. VI; Fed. R. Crim. P. 14; Crawford, 124 S. Ct. 1354.

**C.      Mr. Ortiz-Wense Must Have Access to Exculpatory Testimony.**

Although Mr. Ortiz-Wense has reason to believe that his co-defendant could offer testimony that exculpates him, he acknowledges the requirement that he make a showing to that effect to win severance.  United States v. Vigil, 561 F.2d 1316, 1317 (9th Cir. 1977); United States v. Echeles, 352 F.2d 892 (7th Cir. 1965).  At this point in the proceedings counsel lacks sufficiently definite information to seek the appropriate affidavits from co-defendant or his counsel.  Accordingly, Mr. Ortiz-Wense respectfully reserves the right to seek severance on this ground at a later time, when the various parties' trial positions have solidified.

**D.      Without Severance, the Jury May Find Mr. Ortiz-Wense Guilty by Association, Impinging on Mr. Ortiz-Wense's Due Process Rights.**

It is important to note that "[n]either mere association and activity with a co-conspirator nor even knowledge of the conspiracy's existence . . . meets the standards [required] to link a defendant to the conspiracy charge." United States v. Peterson, 549 F.2d 654, 658 (9th Cir. 1977).  "Mere association and activity with a co-conspirator does not meet the test."  United States v. Basurto, 497 F.2d 781, 793 (9th Cir. 1974) (citation omitted).  A jury ordinarily experiences great difficulty in following admonishing instructions and in keeping separate evidence that is relevant only to co-defendants.  In most cases,

> [a] co-defendant in a conspiracy trial occupies an uneasy seat.  There generally will be evidence of wrongdoing by somebody.  It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together.

Krulewitch, 336 U.S. at 454 (Jackson, J., concurring).  If a jury cannot compartmentalize the evidence that pertains to each defendant, the trial court runs the risk of allowing a conviction based upon a defendant's association with incriminating evidence alone.

The jury cannot reasonably be expected to compartmentalize the evidence as it relates to Mr.

07CR2883-JAH

1   Ortiz-Wense alone.  Cf. United States v. DeRosa, 670 F.2d 889, 898-99 (9th Cir. 1982) (noting that

2   highly limited implicit connections between co-defendants may allow the jury to "easily

3   compartmentalize the evidence").  Since Mr. Ortiz-Wense will likely be prejudiced by evidence

4   admissible only against his co-defendant, his rights can only be protected by severance of the

5   defendant.

6                                                    **III**

7        **THE COURT SHOULD SUPPRESS MR. ORTIZ-WENSE'S STATEMENTS**

8           **PURSUANT TO <u>MIRANDA</u> AND 18 U.S.C. § 3501**

9        The government bears the burden of demonstrating that a defendant's statement is voluntary

10  and that Miranda warnings were given prior to a custodial interrogation. United States v. Harrison,

11  34 F.3d 886, 890 (9th Cir. 1994); see also United States v. Dickerson, 530 U.S. 428, 439-41 (2000)

12  (discussing constitutional underpinnings of Miranda v. Arizona, 384 U.S. 436, 444 (1966) and the

13  need to safeguard "precious Fifth Amendment rights"); see also 18 U.S.C. § 3501. Unless and until

14  the government meets this high burden in this case, Mr. Ortiz-Wense's statements must be

15  suppressed.

16  **A.     The Government Must Demonstrate Compliance with <u>Miranda</u> in This Case**

17           **1.     *Miranda* Warnings Must Precede Custodial Interrogation.**

18       The prosecution may not use statements, whether exculpatory or inculpatory, stemming from

19  a custodial interrogation of Mr. Ortiz-Wense unless it demonstrates the use of procedural safeguards

20  effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436,

21  444(1966).  Custodial interrogation is questioning initiated by law enforcement officers after a

22  personhas been taken into custody or otherwise deprived of her freedom of action in any significant

23  way. Id. See Orozco v. Texas, 394 U.S. 324, 327 (1969).

24       Once a person is in custody, Miranda warnings must be given prior to any interrogation. See

25  United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise

26  the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th

27  Cir. 1990). In order for the warning to be valid, the combination or the wording of its warnings

28  cannot be affirmatively misleading. United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir.

07CR2883-JAH

2003). The warning must be clear and not susceptible to equivocation. Id. (vacating illegal entry conviction where defendant was advised of his administrative rights from an I-826 form and later advised of his Miranda rights). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. Miranda, 384 U.S. at 474; see also Edwards v. Arizona, 451 U.S. 484 (1981). Unless and until the government shows that the agents properly administered the Miranda warnings, the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Mr. Ortiz-Wense's arrest. Miranda, 384 U.S. at 479.

**2.      The Government Must Demonstrate That Any Alleged Waiver of Mr. Ortiz-Wense's Rights Was Voluntary, Knowing, and Intelligent.**

When interrogation occurs without the presence of an attorney and a statement is taken, a *heavy* burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda, 384 U.S. at 475. It is undisputed that, to be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. Schneckloth, 412 U.S. 218. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143 F.3d at 536. The standard of proof for a waiver of these constitutional rights is high. Miranda, 384 U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights). Finally, it should be noted that, since Miranda rests on a constitutional foundation, see Dickerson v. United States, 530 U.S. 428, 438 (2000), no law or local court rule relieves the government of its burden to prove that Mr. Ortiz-Wense voluntarily waived the Miranda protections. Miranda, 384 U.S. 475.

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Edwards v. Arizona,

07CR2883-JAH

1   451 U.S. 477, 472 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983). See also United States v.

2   Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981). In Derrick

3   v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity

4   of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary, and (2)

5   knowing and intelligent. Id. at 820.

6        The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the

7   [Fifth] Amendment . . . ." Id. The second prong, requiring that the waiver be "knowing and

8   intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both

9   of the nature of the right being abandoned and the consequences of the decision to abandon it." Id.

10  at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). This inquiry requires that the

11  Court determine whether "the requisite level of comprehension" existed before the purported waiver

12  may be upheld. Id. Thus, "[o]nly if the `totality of the circumstances surrounding the interrogation'

13  reveal *both* an uncoerced choice *and* the requisite level of comprehension may a court properly

14  conclude that the Miranda rights have been waived." Id. (quoting Colorado v. Spring, 479 U.S. at

15  573) (emphasis in original) (citations omitted)).

16        Under prevailing Ninth Circuit law, the government bears the burden of demonstrating a

17  meaningful Miranda waiver by clear and convincing evidence. See Schell v. Witek, 218 F.3d 1017

18  (9th Cir. 2000) (en banc) (constitutional rights may ordinarily be waived only if it can be established

19  by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent) (citations

20  omitted). Moreover, this Court must "indulge every reasonable presumption against waiver of

21  fundamental constitutional rights." Id. (citations omitted). Unless and until the prosecution meets

22  its burden of demonstrating through *evidence* that adequate Miranda warnings were given and that

23  Mr. Ortiz-Wense knowingly and intelligently waived his rights, Mr. Ortiz-Wense's statements must

24  be suppressed.  Miranda, 384 U.S. at 479.

25  **B.      The Government Bears the Burden of Proving Mr. Ortiz-Wense's Statements Were**

26  **          Made Voluntarily.**

27        A defendant in a criminal case is deprived of due process of law if the conviction is founded

28  upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno,

07CR2883-JAH

1  378 U.S. 368, 387 (1964). This is so even when the procedural safeguards of <u>Miranda</u> have been

2  satisfied. <u>Id</u>. The government bears the burden of proving by a preponderance of the evidence that

3  a confession is voluntary. <u>Lego v. Twomey</u>, 404 U.S. 477, 483 (1972).

4      In order to be voluntary, a statement must be the product of a rational intellect and free will.

5  <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was

6  overborne in a particular case, the totality of the circumstances must be considered. <u>Schneckloth</u>,

7  412 U.S. at 226. Some factors taken into account have included the youth of the accused, his lack

8  of education, his low intelligence, the lack of any advice to the accused of his constitutional rights,

9  the length of the detention, the repeated and prolonged nature of the questioning, and the use of

10  physical punishment such as the deprivation of food or sleep. <u>Id</u>.

11      A confession is deemed involuntary whether coerced by physical intimidation or

12  psychological pressure. <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1962). "The test is whether the

13  confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied

14  promises, however slight, [or] by the exertion of any improper influence.'" <u>Hutto v. Ross</u>, 429 U.S.

15  28, 30 (1976) (quoting <u>Bram v. United States</u>, 168 U.S. 532, 542-43 (1897)). <u>See also</u> <u>United States</u>

16  <u>v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981).

17      Until the government meets its burden of showing all statements of Mr. Ortiz-Wense that it

18  intends to use at trial were voluntary, his statements must be suppressed as involuntary.

19  18 U.S.C. § 3501(a).

20  **C.    This Court Must Conduct An Evidentiary Hearing to Determine the Voluntariness of**

21      **Mr. Ortiz-Wense's Statements**

22      This Court must make a factual determination as to whether a confession was voluntarily

23  given prior to its admission into evidence. 18 U.S.C. § 3501(a). Where a factual determination is

24  required, courts are obligated by Federal Rule of Criminal Procedure 12 to make factual findings.

25  <u>See</u> <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression

26  hearings are often as important as the trial itself,'" <u>Id</u>. at 609-10 (quoting <u>Waller v. Georgia</u>, 467

27  U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated

28  recitation of purported evidence in a prosecutor's responsive pleading. Under section 3501(b), this

10

07CR2883-JAH

1   Court must consider "all the circumstances surrounding the giving of the confession," including:

2       (1) the time elapsing between arrest and arraignment of the defendant making the
        confession, if it was made after arrest and before arraignment, (2) whether such
3       defendant knew the nature of the offense with which he was charged or of which he
        was suspected at the time of making the confession, (3) whether or not such
4       defendant was advised or knew that he was not required to make any statement and
        that any such statement could be used against him, (4) whether or not such defendant
5       had been advised prior to questioning of his right to the assistance of counsel, and (5)
        whether or not such defendant was without the assistance of counsel when questioned
6       and when giving such confession.

7   18 U.S.C. § 3501(b).

8       Without the presentation of evidence, this Court cannot adequately consider these statutorily

9   mandated factors. Accordingly, Mr. Ortiz-Wense requests that this Court conduct an evidentiary

10  hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any

11  statements made by Mr. Ortiz-Wense were voluntary.

12                                          **IV**

13                                    **CONCLUSION**

14      For the foregoing reasons, it is respectfully requested that this court grant the motions stated

15  herein.

16  Dated: February 25, 2008                    Respectfully submitted,

17
                                                _s/DANIEL CASILLAS_____
18                                              DANIEL CASILLAS
                                                Attorney for Defendant
19

20

21

22

23

24

25

26

27

28

                                            11                              07CR2883-JAH

1  DANIEL CASILLAS, ESQ., SBN 110298
   Attorney at Law
2  101 West Broadway, Suite 1950
   San Diego, CA 92101
3  Tel: (619) 237-3777
   Fax: (619) 238-9914
4  Email: dcesq1@sbcglobal.net

5  Attorney for Defendant

6

7

8                    **UNITED STATES DISTRICT COURT**

9                **SOUTHERN DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,              Criminal Case No. 07CR2883-JAH

11                           Plaintiff,
                                            **CERTIFICATE OF SERVICE**
12  vs.

13  MARTIN ORTIZ-WENSE,

14                           Defendant.

15

16         I, the undersigned, declare:  That I am over eighteen years of age, a resident the County of

17  San Diego, State of California, and I am not a party in the within action;   That my business address

18  is: 101 West Broadway, Suite 1950, San Diego, CA 92101.

19         That I caused to be served the within **NOTICE OF MOTIONS AND MOTIONS TO**

20  **SEVER DEFENDANTS; and TO SUPPRESS STATEMENTS**, on the Untied States Attorney's

21  Office, by electronically filing the document with the Clerk of the United States District Court for

22  the Southern District of California, 880 Front Street, San Diego, California 92101, using its ECF

23  System, which electronically notifies them.

24         I certify that the foregoing is true and correct.  Executed on February 25, 2008, at San Diego,

25  California.

26                                          *s/DANIEL CASILLAS*
                                            DANIEL CASILLAS
27

28

                                     12
                                                                    07CR2883-JAH