KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 07CR2883-2-JAH |
| Plaintiff, ) | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. ) | **(1) TO SEVER DEFENDANTS** |
| MARTIN ORTIZ-WENSE (2), ) | **(2) TO SUPPRESS STATEMENTS** |
| Defendant. ) | Date: March 10, 2008<br>Time: 8:30 a.m.<br>Court: The Hon. John A. Houston |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motions to Sever Defendants and Suppress Statements. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities.

//

//

//

//

//

**I**

**STATEMENT OF FACTS**

In the summer of 2007, Drug Enforcement Administration (DEA) agents initiated an investigation of the defendant's co-defendant, Ruben Navarro-Maldonado. Between August 30, 2007 and September 20, 2007, a confidential source (hereinafter "CS") employed by the DEA arranged for defendant Navarro-Maldonado to meet with DEA agents acting in an undercover capacity on three separate occasions. During those meetings, defendant Navarro-Maldonado sold quantities of methamphetamine to DEA agents acting in an undercover capacity.

On October 4, 2007, the CS set up another meeting with defendant Navarro-Maldonado. Throughout the day, defendant Navarro-Maldonado and the CS were in communication via telephone and DEA agents maintained surveillance of defendant Navarro-Maldonado. During one of those telephone conversations, defendant Navarro-Maldonado stated that he was going to meet his source of supply and meet with the CS after. DEA agents observed defendant Navarro-Maldonado meet with defendant Ortiz-Wense. Thereafter, Navarro-Maldonado met with the CS and attempted to sell the CS approximately 76.2 grams of methamphetamine (actual). Both defendants were subsequently arrested.

After defendant Ortiz-Wense was arrested, a search was conducted of his home, and an additional 24 grams of methamphetamine, cocaine, a digital scale, and U.S. Currency were recovered from his home.

Defendant Ortiz-Wense's Statements

Defendant Ortiz-Wense was arrested at approximately 5:15 pm on October 4, 2007. He was advised of his <u>Miranda</u> rights by DEA Special Agent Raphael Romero in the Spanish language, defendant's primary language, on October 4, 2007 at approximately 7:45 pm. Defendant Ortiz-Wense agreed to waive his rights, and to speak with agents. Defendant Ortiz-Wense stated that he met defendant Navarro-Maldonado through a friend named Luis. After being informed that defendant Navarro-Maldonado had positively identified him as the person from whom he had

1  received methamphetamine on that day, defendant Ortiz-Wense stated that he had purchased the
2  methamphetamine on the street from an unknown source. He went on to state that he had arrived
3  in the United States illegally about a year and a half before. He further stated that he resided with
4  his cousin and her husband, and denied that they were involved in the sale of methamphetamine.
5  The interview was concluded at approximately 8:00 pm after defendant Ortiz-Wense stopped
6  answering agents' questions.

Defendant Navarro-Maldonado's Statements

Defendant Navarro-Maldonado was arrested at approximately 3:35 pm on October 4, 207. He was advised of his Miranda rights in Spanish by DEA Special Agent Raphael Romero on October 4, 2007 at approximately 7:15 pm. However, he had originally been advised of his Miranda rights at approximately 5:10 pm, but was not actually interviewed until after being re-advised of his Miranda rights at 7:15 pm. Navarro-Maldonado agreed to waive his rights, and to speak with agents. He stated that his source of supply was a 30 year old man named Miguel Carrasco who drives a red Jeep Cherokee. He further stated that Carrasco was in Mexico, and that he had been introduced to a man named Juan, another source of supply. He also stated that prior to being arrested on October 4, 2007, Juan gave defendant Navarro-Maldonado 10 ounces of methamphetamine on consignment. Agents showed a photograph of defendant Ortiz-Wense to defendant Navarro-Maldonado, and defendant Navarro-Maldonado identified defendant Ortiz-Wense as Juan.

**II**

**POINTS AND AUTHORITIES**

A.   **SEVERANCE IS INAPPROPRIATE**

Defendant's motion for severance is apparently based on separate grounds: (1) that he will be denied access to exculpatory evidence of the co-defendant; (2) that there may be problems under Bruton v. United States, 391 U.S. 123 (1968); (3) that the defendants may present antagonistic defenses; and (4) that he may be found guilty by association. Defendant has failed to attach any affidavits to support his claims.

### 1. General Principles

Federal Rule of Criminal Procedure 8(b) specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses.

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense of offenses. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.

The granting or denial of a motion for severance is governed by Federal Rule of Criminal Procedure 14. Rule 14 provides in pertinent part:

> If it appears that a defendant or the Government is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

In other words, although joinder is generally favorable because it promotes efficiency, see United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir. 1991), Rule 14 provides that the trials may be severed when it is apparent that a joint trial would cause prejudice. The Supreme Court has held that "when defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 536 (1993).

### 2. Severance Is Not Required Due To Possible Denied Access To Codefendant's Exculpatory Testimony

Defendant requests severance on the basis that codefendant's testimony would exculpate him. It should be denied.

In considering Defendant's claim that the codefendant will provide exculpatory testimony, a district court must weigh a number of factors, among them, "the good faith of the defendant's intent to have a codefendant testify, the possible weight and credibility of the predicted testimony, the probability that such testimony will materialize, [and] the economy of

1    a joint trial." <u>United States v. Mariscal</u>, 939 F.2d 884 (9th Cir. 1991).  This list is not

2    exclusive.  <u>Id.</u>

3          The Court held in <u>Mariscal</u> that the district court must also consider the exculpatory

4    nature effect of the desired testimony -- in other words, the degree to which the asserted

5    codefendant testimony is exculpatory.  <u>Id.</u>

6          To meet the requirements of <u>United States v. Vigil</u>, 561 F.2d 1316 (9th Cir. 1977), the

7    defendant must show that he would call the codefendant at his severed trial; that the

8    codefendant would in fact testify for him and that the codefendant's testimony would be

9    favorable to him.  The Court in <u>Mariscal</u> held that a moving defendant must show more than

10   that the offered testimony would benefit him;  he must show that the codefendant's testimony is

11   "substantially exculpatory" in order to succeed.  <u>Id.</u> at 9293. In that case, the Ninth Circuit

12   determined that the district court did not abuse its discretion in denying Mariscal's motion to

13   sever because he did not present an affidavit of codefendant swearing that he would testify at a

14   separate trial.  <u>See</u> also <u>United States v. Olano</u>, 62 F.3d 1180 (9th Cir. 1995)(no evidence to

15   support the claim that one of the codefendants would have testified on defendant's behalf).

16         Applying the analysis here, defendant Ortiz-Wense would have to aver that defendant

17   Navarro-Maldonado would tesify and exculpate defendant Ortiz-Wense.  However, there is no

18   factual basis for this assertion.  Not only has he failed to produce an affidavit, there is no

19   factual basis for any such claim, particularly in light of what defendant Navarro-Maldonado

20   stated in his post-arrest statements.

21         In light of the fact that defendant has failed to produce affidavits of the codefendant

22   indicating his willingness to testify, that he failed to establish that their testimony would be

23   "substantially exculpatory" in nature, and that the effect or the degree to which the asserted

24   codefendant's testimony is exculpatory (not mere speculation), it is the Government's position

25   that Defendant's motion to sever the trial should be denied.

26              **3.      Bruton Does Not Mandate Severance**

27         Relying on <u>Bruton v. United States</u>, 391 U.S. 123 (1968), defendant argues that the

28   codefendants' statements warrant a severed trial.  In <u>Bruton</u>, the Supreme Court held that the

5              Criminal Case No. 07CR2883-2-JAH

1  Sixth Amendment right to confront adverse witnesses attaches if the non-testifying codefendant
2  makes a confession that implicates the defendant and the Government introduces the
3  confession into evidence at their joint trial, even if the jury is instructed to consider the
4  confession only against the codefendant. Id. 391 U.S. at 135-136.

5      The Courts have limited the Bruton principle to exclude only statements that are
6  "powerfully incriminating" or "clearly inculpate the defendant." Richardson v. Marsh, 481
7  U.S. 200, 208 (1987); United States v. Enrique-Estrada, 999 F.2d 1355, 1359 (9th Cir. 1993);
8  United States v. Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir. 1993) (citations omitted). While
9  defendant Navarro-Maldonado's statements clearly implicate defendant Ortiz-Wense, the
10 Government is amenable to redacting the statement such that defendant Ortiz-Wense is not
11 clearly implicated. For example, Navarro-Maldonado's statement could be redacted down to a
12 statement that he had received methamphetamine from a source of supply prior to meeting with
13 the confidential source and being arrested. This, combined with a limiting instruction, would
14 protect the defendant's Confrontation Clause rights. In other words, the Confrontation Clause
15 is not violated when the admission is accompanied by a proper limiting instruction, and when
16 the statement is redacted to eliminate the defendant's name and any reference to him.
17 Richardson, 481 U.S. at 211; United States v. Yarbrough, 852 F.2d 1522, 1537 (9th Cir. 1988).
18 Therefore, it is not necessary to sever the case. Moreover, the Government has not made a
19 final determination about introducing defendant Navarro-Maldonado's statement. As such, the
20 issue may be moot.

21     **4.    Severance Due To "Guilt By Association"**

22     Defendant suggests that there is a substantial risk that he will not receive a fair trial
23 unless severance is granted.

24     The anticipation of a "spill-over effect," that is, that a jury may fail to compartmentalize
25 the evidence as it relates to one defendant versus another, does not compel a severance. United
26 States v. McDonald, 576 F.2d 1350. "The mere fact that there may be more incriminating
27 evidence against one codefendant than another does not provide a sufficient justification for
28 separate trials." United States v. Polizzi, 801 F.2d 1543, 1554 (9th Cir. 1986). See also United

1  States v. Hernandez, 952 F.2d 1110 (9th Cir. 1991)(Court rejected defendant's argument that
2  the jury must have had difficulty separating the evidence against co-defendant because of his
3  "familial association").

4  Furthermore, a defendant seeking severance based on the "spillover" effect of evidence
5  admitted against a co-defendant must also demonstrate the insufficiency of a limiting
6  instruction given by the judge. See Zafiro v. United States, 506 U.S. 534 (1993)(the risk of
7  prejudice posed by joint trials can be cured by proper jury instructions); United States v.
8  Nelson, 137 F.3d 1094 (9th Cir. 1998)(no severance necessary in robbery case where judge
9  gave limiting instructions); United States v. Joetzki, 952 F.2d 1090 (9th Cir. 1991), citing,
10 United States v. Candoli, 870 F.2d 496, 510 (5th Cir. 1989).

11 This is not the situation where Defendant will be found guilty by association, especially
12 in view of the evidence in this case. As referenced in the statement of facts, Defendant
13 admitted to getting the methamphetamine from a source of supply and was observed meeting
14 with defendant Navarro-Maldonado after getting the methamphetamine. The jury should have
15 no problems with compartmentalizing the evidence against him, particularly because it is
16 exclusive to the October 4,2 007 incident.

17 In that defendant Ortiz-Wense has failed to carry his burden under these standards, his
18 motion to sever should be denied. Moreover, the issue should be reserved until the motion to
19 suppress the defendants' statements may be heard.

20 **B.    <u>DEFENDANT'S MOTION TO SUPPRESS STATEMENTS</u>**

21 Defendant's motion to suppress statements should be denied for failure to comply Local
22 Criminal Rule 47.1 ("Declarations in Support of and In Opposition to Criminal Motions")
23 which provides that "[C]riminal motions requiring a predicate factual finding shall be
24 supported by declaration(s)." L.R. 47.1(g)(1) (August 20, 1997). According to the Rule:

25 > [E]ach declaration shall set forth, under penalty of perjury, all facts then
> known and upon which it is contended the motion should be granted or denied.
26 > Each declaration shall show affirmatively that the declarant is competent to
> testify to the matter stated therein, shall avoid argument and conclusions of law
27 > and shall in all other respects contain only such representations as would be
> admissible under the Federal Rules of Evidence.

28

1  L.R. 47.1(g)(2). When a party fails to properly support a motion the court need not grant an
2  evidentiary hearing. L.R. 47.1(g)(1); see also United States v. Wardlow, 951 F.2d 1115 (9th
3  Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not
4  properly submitting declaration pursuant to similar local rule in Central District of California).

Here, Defendant failed to properly support his motion to suppress statements which he claims were made in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Accordingly, his motion to suppress should be denied without hearing.

In the event the issue of Defendant's statements is heard by the Court, the Government offers the following points and authorities.

### 1. Defendant's Waiver Of Rights Was Knowing, Voluntary, And Intelligent

Defendant's statements were voluntary and made after he was advised of his Miranda rights and waived them. Before the interview began, Defendant was read his Miranda rights in the Spanish language, his native language. After stating that he understood his rights, Defendant waived his rights and agreed to be interviewed without an attorney present.

It is uncontested that custodial interrogation designed to elicit incriminating statements must be preceded by explicit procedural safeguards. Miranda v. Arizona, 384 U.S. 436 (1966). Whether there has been an intelligent Miranda waiver by Defendant depends upon the particular facts in the case, including the background, experience, and conduct of the accused. Brewer v. Williams, 430 U.S. 387, 403 (1977); United States v. Rodriguez-Gastelum, 569 F.2d 482, 483 (9th Cir.) cert. denied, 436 U.S. 919 (1978).

Statements taken in violation of the Miranda safeguards are ordinarily inadmissible. See United States v. Heldt, 745 F.2d 1275 (9th Cir. 1984). The burden is on the Government to establish voluntariness by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 488-489 (1972).

While it is true that this burden rests on the Government, the Court must still consider what effect the actions of the Government agents had upon defendant. The focus of the inquiry is on defendant's state of mind. See Title 18, United States Code, Section 3501(b). Therefore,

1 the Court should consider Defendant's testimony, or his failure to give it, before deciding this
2 issue.
3       A statement is considered voluntary if the totality of the surrounding circumstances
4 indicates that it was the product of free and rational choice. <u>Culombe v. Connecticut</u>, 367 U.S.
5 568, 602 (1961). The voluntariness of a Fifth Amendment waiver depends "on the absence of
6 police overreaching, not on 'free choice' in any broader sense of the word." <u>Colorado v.
7 Connelly</u>, 479 U.S. 157, 170 (1986). In examining the totality of the circumstances, the Court
8 must examine the personal characteristics of defendant together with the details of the
9 interrogation. <u>See</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973). Relevant personal
10 characteristics of defendant include his age, intelligence, educational level, knowledge of
11 rights, as well as his physical, mental, or emotional condition. <u>See</u> <u>Brewer v. Williams</u>, 430
12 U.S. 387, 403 (1977).
13       The testimony would establish that Defendant was not subjected to outrageous conduct
14 such as physical intimidation, torture, coercion, or threats. Rather, Defendant had his <u>Miranda</u>
15 rights properly read to him in his native language. Thereafter, he waived his rights and agreed
16 to speak.
17       The Government's conduct was entirely proper and this Court should not suppress any
18 statements made by Defendant.

### III.

### **CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: March 3, 2008

        Respectfully submitted,

        KAREN P. HEWITT
        United States Attorney


        /s/***Caroline P. Han***
        CAROLINE P. HAN
        Assistant United States Attorney
        Attorneys for Plaintiff
        United States of America

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR2883-2-JAH |
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| MARTIN Ortiz-Wense-WENSE,(2) | |
| Defendant. | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IT IS HEREBY CERTIFIED THAT:

I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Daniel Casillas**
Law Office of Daniel Casillas
101 West Broadway
Suite 1950
San Diego, CA 92101
(619)237-3777
Fax: (619)238-9914
Email: dcesq1@sbcglobal.net
*Attorney for Defendant Ortiz-Wense-Wense*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 3, 2008.

/s/ ***Caroline P. Han***
CAROLINE P. HAN